IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: MICHAEL TRENT WILSON | ] | No. 13-15248 |
| | ] | |
| Debtor, | ] | Chapter 7 |
| | | |
| BANK 7, a state banking association and acquirer of First State Bank of Camargo through FDIC receivership, | ] ] ] ] | |
| Plaintiff, | ] ] | |
| v. | ] ] | Adv. No._____ |
| MICHAEL TRENT WILSON, | ] ] | |
| Defendant. | ] | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Plaintiff, Bank 7, a creditor in the associated bankruptcy case, in support of this Complaint seeking a determination of the dischargeability of debt, states as follows:

### JURISDICTIONAL AND GENERAL FACT ALLEGATIONS

1. This adversary proceeding has been brought in connection with the Debtor's case under Chapter 7 of Title 11 of the United State Code, Case Number 13-15248, now pending in this Court. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334.

2. This is a core proceeding under 28 U.S.C. §157(b)(2) subpart I.

3. Venue is proper in this Court under 28 U.S.C. §1409(a).

4. The first date set for the meeting of creditors held in this case pursuant to 11 U.S.C. §341 was January 9, 2014.

5. Bank 7 is a creditor in the associated Chapter 7 case and is an Oklahoma state banking association formed pursuant to the laws of Oklahoma and maintains its principal place of business in the State of Oklahoma.

6. The Defendant, Michael Trent Wilson (referred to sometimes hereafter as "Wilson" or the "Defendant"), is the Debtor in the associated Chapter 12 case.

7. On April 7 and April 21, 2010, the Defendant executed and delivered the following Promissory Notes payable to the order of the First State Bank of Camargo:

| Note No. | Date | Original Principal Balance |
|---|---|---|
| 87992 | 4/7/10 | $15,050.00 |
| 87985 | 4/21/10 | $230,800.00 |
| 87986 | 4/21/10 | $40,000.00 |
| 187987 | 4/21/10 | $298,200.00 |
| 187988 | 4/21/10 | $70,900.00 |

8. In order to secure these Promissory Notes, the Defendant also executed various Security Agreements and Mortgages in favor of the First State Bank of Camargo.

9. Subsequently, on or about January 28, 2011, the First State Bank of Camargo was closed and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of the First State Bank Camargo.

10. On or about the same day, Plaintiff, Bank 7, acquired The First State Bank of Camargo and its assets, including the Defendant's Promissory Notes, Mortgages and security documents, through a Purchase and Assumption Agreement with the FDIC.

11. Thereafter, the Defendant defaulted on the Promissory Notes and security documents, resulting in Bank 7 initiating a foreclosure proceeding in the District Court of Ellis County, State of Oklahoma, on April 30, 2012.

12. On March 19, 2013, the District Court of Ellis County, State of Oklahoma, entered judgment in favor of the Plaintiff, Bank 7, and against the Defendant, as follows:

| "Note No. | Balance as of March 19, 2012 |
|---|---|
| 87985 | $257,205.30 |
| 87986 | $ 42,248.70 |
| 187987 | $337,157.38 |
| 187988 | $ 79,857.82 |
| 87992 | $ 16,697.64 |

plus interest continuing to accrue thereon at the contract rate until the date of judgment, plus all other charges due and proper under the promissory notes evidencing said sums including, but not limited to, late charges, taxes, insurance, cost of preservation of the collateral securing said sums, all of said sums bearing interest from and after the date of judgment at the contract or statutory rate, whichever is greater"

and also foreclosing the Defendant's interest in the personal property and one of the two tracts of real estate pledged to secure that debt.

13. On April 30, 2013, following a trial to the District Court of Ellis County, State of Oklahoma, that Court entered judgment in favor of Bank 7, foreclosing the Defendant's interest in the remaining tract of real estate pledged to secure the above-referenced debt.

14. Then, on June 3, 2013, the Defendant filed his Petition under Chapter 12 of the Bankruptcy Code, thus initiating the underlying Chapter 12 case.

15. As of that date, the Defendant was indebted to Bank 7 in the approximate amount of $883,145.76.

## COUNT I – §523(a)(2)(A)

Plaintiff adopts the allegations made in Paragraphs one (1) through fifteen (15) above and states further:

16. Prior to receiving the financing evidenced by the above-referenced Promissory Notes, the Defendant was required to provide various documents and

complete certain steps, including but not limited to, allowing an inspection and appraisal of the collateral that would be pledged to secure said financing.

17. Included in this process was the inspection and appraisal of the cattle owned by the Defendant which were to be collateral for the financing.

18. The First State Bank of Camargo enlisted Tom D. Eike, an Oklahoma Certified Appraiser, to inspect the Defendant's cattle and provide an appraisal of their condition and value.

19. On September 4, 2009, the Defendant represented to Tom D. Eike, as an agent for the First State Bank of Camargo, that he owned 472 head of cattle which Mr. Eike inspected and appraised as follows:

| Quantity | Kind-Sex | Breed | Color | Weight or Avg. Weight | Age or Age Range |
|---|---|---|---|---|---|
| 179 | Mixed Steers/Heifers | Mixed | Mixed | 625 | 1YR-18MO |
| 119 | Mixed Steers/Heifers | Mixed | Mixed | 550 | <1YR |
| 92 | Mixed Steers/Heifers | Mixed | Mixed | 775 | 1YR-18MO |
| 82 | Mixed Steers/Heifers | Mixed | Mixed | 700 | 1YR-18MO |

20. The First State Bank of Camargo relied on the Defendant's representations that he owned the 472 head of cattle that Tom D. Eike inspected and appraised, and in doing so, refinanced and provided additional credit to the Defendant.

5

21. In order to secure this financing, the Defendant executed and delivered to The First State Bank of Camargo, among other security documents, security agreements, giving The First State Bank of Camargo a security interest in all "livestock/farm products…including but not limited to all….cattle."

22. Proceeds from the sale of the majority of the 472 head of cattle were never received by either the First State Bank of Camargo or the Plaintiff, Bank 7.

23. The Defendant has since testified that he actually only owned 60 to 80 head of cattle at the time of Mr. Eike's appraisal and the extension of credit and financing by The First State Bank of Camargo.

24. The representations of the Defendant, as referenced in paragraph 19, above, were misrepresentations made with the Defendant's knowledge of their falsity, and were made with the intent to deceive The First State Bank of Camargo into extending credit and financing to the Defendant.

25. Based on various factors, including but not limited to the Defendant's historical cattle numbers and the inspection of the cattle by Mr. Eike, The First State Bank of Camargo justifiably relied on the misrepresentations of the Defendant regarding his ownership of the cattle.

26. As a result of this justifiable reliance on the misrepresentations of the Defendant, The First State Bank of Camargo extended credit and financing to the Defendant that would have not been extended without these misrepresentations, and Bank 7 has been proximately damaged by these

misrepresentations of Defendant in the amount of $883,145.76, as of June 3, 2013.

WHEREFORE Plaintiff prays that this Court determine that debt of the Defendant to Bank 7 is exempt from discharge and non-dischargeable in the amount of $883,145.76, as of June 3, 2013, pursuant to 11 U.S.C. §523(a)(2)(A) and for such other and further relief as this Court deems just and equitable.

### COUNT II – §523(a)(2)(B)

Plaintiff adopts the allegations made in Paragraphs one (1) through twenty-six (26) above and states further:

27. As stated above, prior to receiving the financing evidenced by the above-referenced Promissory Notes, the Defendant was required to provide various documents and complete certain steps.

28. In addition to the required inspection and appraisal discussed above, the Defendant was also required to provide The First State Bank of Camargo with financial statements verifying his financial condition.

29. On November 4, 2009, the Defendant executed and delivered to the First State Bank of Camargo a written financial statement entitled Farm and Home Plan and dated October 19, 2009, verifying that as of that date, he owned the following assets:

| Livestock .to be sold | Units | Unit Weight | Value |
|---|---|---|---|
| RS STOCK (ST/HFR) | 179 | 625 | $111,875 |
| RS STOCK (ST/HFR) | 119 | 550 | $68,068 |
| RS STOCK (ST/HFR) | 92 | 775 | $69,161 |
| RS STOCK (ST) | 82 | 700 | $56,826 |
| TOTAL | 472 | | $305,930.00 |

as well as 225 acres of wheat valued at $6,750.00.

30.   Then, on April 7, 2010, the Defendant executed and delivered to the First State Bank of Camargo another written financial statement entitled Farm and Home Plan, this one dated April 7, 2010, verifying that as of that date, he owned the following assets:

| Livestock .to be sold | Units | Unit Weight | Value |
|---|---|---|---|
| RS STOCK (HFR) | 112 | 450 | $56,952 |
| RS STOCK (ST) | 38 | 450 | $22,230 |
| RS STOCK (ST/HFR) | 172 | 675 | $120,744 |
| RS STOCK (ST) | 130 | 500 | $80,600 |
| RS STOCK (ST/HFR) | 25 | 450 | $13,725 |
| TOTAL | 477 | | $294,251.00 |

as well as 25 tons of hay valued at $2,250.00 and 80 acres of wheat valued at $2,400.00.

31.   The Defendant has since testified that he actually only owned 60 to 80 head of cattle at the time that these Farm and Home Plans/financial statements were executed and delivered and further, that he "never had 25 tons" of hay and that he has "never growed wheat in his life."

8

32. The Farm and Home Plans/financial statements were materially false and were made and published by the Defendant with the intent to deceive The First State Bank of Camargo into extending credit and financing to the Defendant.

33. The First State Bank of Camargo reasonably relied on the false Farm Home Plans/financial statements in extending credit and financing to the Defendant, which it would not have done but for the false written statements presented by the Defendant concerning his financial condition.

34. Consequently, Bank 7 has been damaged by the false Farm and Home Plans/financial statements regarding the Defendant's financial condition in the amount of $883,145.76, as of June 3, 2013.

WHEREFORE Plaintiff prays that this Court determine that the debt of the Defendant to Bank 7 is exempt from discharge and non-dischargeable in the amount $883,145.76, as of June 3, 2013, pursuant to 11 U.S.C. §523(a)(2)(B) and for such other and further relief as this Court deems just and equitable.

### COUNT III – §523(a)(6)

Plaintiff adopts the allegations made in Paragraphs one (1) through thirty-four (34) above and states further:

35. Despite the fact that the Defendant granted The First State Bank of Camargo a security interest in all "livestock/farm products…including but not limited to all….cattle, the Defendant, intentionally undertook actions to convert cattle proceeds that were subject to the lien of The First State Bank of Camargo/Bank 7.

36. This conversion includes, but is not limited to, the proceeds from the sale of 27 head of cattle that were sold in the name of the Defendant's daughter, Macy Wilson, on August 26, 2011, at Woodward Livestock, Inc., despite those cattle being purchased by and belonging to the Defendant.

37. This conversion further includes, but is not limited to the Defendant transferring practically the balance of his checking account, in which cattle proceeds subject to Bank 7's lien had been deposited, to an entity owned primarily, if not entirely, by his parents.

38. On April 8, 2011, Defendant's "Special" checking account with Bank 7 contained a balance of $36,114.91.

39. On that same date, Defendant wrote check no. 4760 to F&E Wilson Family, L.L.C. in the amount of $35,750.00 as payment for, according to the memo line, "cattle."

40. F&E Wilson Family, L.L.C. is an Oklahoma limited liability company, the only members of which are the Defendant's mother and father.

41. The Defendant and his father have both since testified that neither Defendant's father nor any of his entities or trusts have owned cattle for as many as 10 to 20 years.

42. The above-described actions of the Defendant in converting cattle proceeds and profits in which Bank 7 held a secured interest, were undertaken with the willful and malicious intent of placing those proceeds and profits outside

of the reach of Bank 7, thus resulting in injury to Bank 7 in the amount of $883,145.76, as of June 3, 2013.

WHEREFORE Plaintiff prays that this Court determine that the debt of Defendants to Bank 7 is exempt from discharge and non-dischargeable in the amount $883,145.76, as of June 3, 2013, pursuant to 11 U.S.C. §523(a)(6) and for such other and further relief as this Court deems just and equitable.

                Respectfully submitted,

                s/ Brendon S. Atkinson
                Brendon S. Atkinson, OBA # 19396
                Gungoll, Jackson, Box & Devoll, P.C.
                P.O. Box 1549
                Enid, OK 73702
                Telephone: (580) 234-0436
                Facsimile: (580) 233-1284
                atkinson@gungolljackson.com

                Attorneys for Bank 7